The next matter, number 25-1149, Rebecca Blakesley v. Jennifer Marcus et al. At this time, would counsel for the appellants please come to the podium and introduce themselves on the record to begin? Thank you, Mr. Clerk. Michael McDonough, accompanied by Edward McDonough, on behalf of the appellants Colleen Marcus and Jennifer Marcus, who are also here today. If I may, I would request one minute for rebuttal. You may. May it please the Court. This Court should reverse and allow the special motion to dismiss for three reasons. One, each Marcus defendant or appellant here was filing her own independent petition or complaint to the Board of Registered Nursing, the BORN. Two, all of the allegedly defamatory or torturous activity arises out of those complaints to that governmental regulatory board, the BORN. And it all involved nursing. And number three, it is impossible for the plaintiff appellant in this case, Ms. Blakesley, to show by a preponderance of the evidence that the Marcus' petitioning was devoid of any reasonable factual support because she admitted to facts sufficient arising out of those same complaints in her own sanctions before the BORN. Moving to the first point, Your Honors. This framework has been simplified just last year in the Bristol Asphalt case, replacing DuraCraft and the complex analysis that predated the current framework, which delved into the motivations of the filers, which required the trial judges to undergo cross-examinations and deep dive into the motivations of why something was filed. Instead, phase one is simplified. Was there petitioning activity? And the question in that first question of phase one is, was the motion proponent engaged in the exercise of its own right of petition? The answer to question one is a simple yes. Each Marcus, Colleen Marcus and Jennifer Marcus, was filing their own petition to the Board of Registered Nursing. Counsel, I just have two questions for you about what you just said. One is, I think the district court here said even if they each were pursuing their own interests in petitioning activity, even assuming you win on that first prong, that it was still appropriate to grant, to deny the relief you were asking for. So I guess I wanted to just go back to what you said the sentence before, which was that the first stage of the analysis, as the SJC has laid it out, is just about whether this concerns petitioning activity. I'm not sure that's exactly right, and that's what I wanted to ask you about. My understanding is the SJC has said it has to solely concern petitioning activity, and therefore if there are mixed claims, I think was the SJC's language, then that's not good enough. And so the district court here, as I understood the decision, and you can tell me if you disagree, ultimately concluded that there were mixed claims here. That's correct, Your Honor. And the flow chart in Bristol does have two questions in phase one. And the first question may be less significant here. Did they file their own claims? The district court did cite to Cobran where an expert witness wasn't a petitioner because he was hired in a contractual relationship. I think that the district court misunderstood Cobran and that that doesn't apply. They weren't hired by anyone. They filed their own petitions. So I think it's a yes to question one on the flow chart. Before you go to one, let me just finish with one, and then I think the action is actually at the second. But on the first, there is a case where a police officer who wrote to, you know, filed documents associated with his job, they said that was not his own petitioning. So you seem to have made two arguments, but let's focus on the one where you call them mandatory reporters. I can at least draw an analogy between a mandatory reporter and someone reporting as part of their job. There's some distinction there, but it may not be a very big one. So what is it? What are you saying these people did in reporting? Were they reporting as a mandatory condition or were they just reporting as so-called good Samaritans? No, they were reporting as good Samaritans. One of the defendants, excuse me, Jennifer Marcus, happens to be a nurse and drew upon her trainings from things that arose in the worksite. None of these things arose in either of their worksite settings. But moving to the second component of phase one that Your Honor raised, the question is correctly posed, which is was this solely arising out of petitioning activity? And it absolutely was here. There's two questions to review here. Can I just ask you to focus in on something for this inquiry? Because I don't think your brief addressed the reports to the school, the plaintiff's school, as I understand it, or academic institution, and I think touched on but didn't necessarily fully grapple with the reports to the employers. And that was the crux of the district court's decision, that this wasn't solely petitioning activity. So could you try and focus in on that just because we have limited time? Yes, Your Honor. The statute, of course, allows the quintessential petitioning activity to the born. At a minimum, Colleen Marcus only reported to the born. She should have had her motion allowed. When you go to Jennifer Marcus, who reported to the born and Ms. Blakeslee's employers and the school, you look at the statute, which says it's governmental activity, statements posed to governmental boards, or statements made in connection with a governmental report, or statements reasonably likely to encourage consideration or review. So how did they meet those standards? Because the district court concluded they didn't. That reporting to her school and her employers just didn't meet either one of those standards that you just laid out. So what was the district court's error there? We were denied a hearing in the district court. But what I would have explained to the district court judge would be those three other categories in the statute open the door for statements, mirror, identical statements, just like in the case that we did cite in our brief, Wynne v. Kriegel, that when you have a governmental report and you take a photocopy of that and make an exactly identical statement to a non-governmental witness, or in that case a newspaper, or hear the central witnesses of the claim that they brought to the born, how could a proponent of a claim to the governmental... How is the school a central witness to the claims to the born? One of the complaints to the born was that she had falsified her credentials to become a nurse by plagiarizing activities. They had e-mails of her having other people doing her work. So they asked the school to participate in the hearing as a witness. How could someone go to a governmental board and not be allowed to speak to a witness of their claim to present that evidence to the board if that itself is defamatory? And like in Wynne v. Kriegel, they weren't going around spreading other things about Ms. Blakeslee. It was a photocopy of what they had provided to the born, a mirror image, just like in Wynne v. Kriegel, where there the court said that that can be pulled in and subsumed in the governmental activity. But at a minimum, the case should have been reduced and narrowed only to Jennifer Marcus and only insofar as her statements were made to the witnesses here. The employers, there were five or six employers at play where she was quadrupling her workload and violating HIPAA by having her husband and her friends work with her who are not licensed providers. And so those employers were essential to that report. Let me just ask you, I understand your arguments about, you know, it should have been a party-by-party analysis and you're saying the claims should have been narrowed. But is that actually what happens under the SJC's ruling, which we have to apply here, of course? I thought if they're mixed claims and the case just goes forward and the idea is that it's best to sort out what happens with the mixed claims and discovery and summary judgment. It's not that the case is then narrowed. If I may address that first by party, I believe that each party should be analyzed in their own silo. And without question, there's no evidence in the complaint alleged even that Colleen Marcus did anything outside of the born. When you move to Jennifer Marcus, you see, again, it's the context is what the courts have held is essential in seeing a mirror image of those reports to a witness or even to a newspaper. The judge said they were in collusion. I mean, that's what the judge said, that there's evidence they were in collusion. So the reports to the school and to the employer, Colleen may have responsibility for those. And I guess how do we even begin to broach getting into that at this early stage of what their relationship was as it relates to this problem? That's the Durecraft and Pryor deep dive that's not in the current Bristol system. A civil conspiracy collusion not even pled in the complaint, Your Honor. It was not necessary for the court to go and add those complaints, those causes of action to the complaint in this case. And that's why it's essential to just look at the petitioning activity. Was it protected? Certainly it was for Colleen Marcus. The final question... Well, counsel, I think what you're saying is in reply to Judge Rickleman's question having to do with mixed claims, that the district court basically said a mixed claim at least includes parties who are in collusion with each other as to the activities. Are you saying that's an error of law on the part of the district court? Or are you simply saying the SJC hasn't made that clear and it's up to us to interpret what they mean? I don't believe that the SJC has articulated a rule on that specific question. However, Your Honor, I would point out that in this case there were affidavits submitted by the parties which directly refuted that theory and stated why they reported and to whom they reported and that there was no such civil conspiracy to harm Ms. Blakeslee. And there was never any evidence to contradict that. And in any analysis of the papers, which is required under the new Bristol standard, this was petitioning activity by these two individuals about unlawful, continued, repeated HIPAA violations they learned of that they put before the board. Does your argument then devolve down into the district court is required to accept the moving parties' assertions and their affidavits? And if the district court says, as it finally said, in light of all of this, I think there are disputed issues and clarification will come with further discovery. No, Your Honor. I think once the Marcus' had shown that all of their petitioning was within this process to the board, it was for the plaintiff to show. You have to accept as true all of their assertions, putting aside the legal questions about mixed claims. Your position seems to be that any time a defendant moves to dismiss, the court under the anti-SLAPP statute has to accept their version of the facts. No, Your Honor. It's for the court to make the determination whether the movement has made that showing under stage one. Yeah, it made that showing. Yes, Your Honor. And here they concluded you had not? The court concluded that based upon a de facto position that simply because non-governmental witnesses were included in the circulation of the information, therefore there could be no petitioning activity. Kregel v. Winn says the exact opposite in the context of a mirror image to someone encouraged, as the statutory language states, someone encouraged to participate in that same ongoing governmental report. And there was no basis for the plaintiff in this case to show that that petitioning was devoid of any factual basis because she later admitted that the facts were sufficient to justify her sanctions. Thank you, Counsel. Thank you, Your Honors. Thank you, Counsel. At this time, would Counsel for the appellee please introduce himself on the record to begin? Good morning. May it please the Court. Sean Kahn for appellee, Rebecca Blakeslee. Your Honor, so I want to quickly address the issue of jurisdiction and whether this Court can actually hear this case with the Collateral Order Doctrine. The two cases that the Court decided on similar issues with the two main cases, the Godin case and the Francini case. In Godin, the Court said, we'll leave to another day whether or not the Collateral Order Doctrine applies to an anti-slap decision on the merits, right? And in the Court did a four-part test. The second prong of that test is what's important here, right, whether the matter is completely distinct on the merits. And I would argue with the new Bristol test that it simply can't be because what the Court did here, right, they did a full analysis of the claims using affidavits, using other pleadings, and those affidavits and pleadings were enmeshed in facts where you just can't say they're completely distinct. Counsel, what I'm trying to figure out is if it depends because I think what we've said is that the analysis has to be done very carefully. It may not be the same. The outcome, whether the Collateral Order Doctrine applies, may not be the same in every case. And I'm trying to understand if here where the District Court denied the motion based on the Stage 1 analysis for Bristol, why does the Stage 1 analysis impact the analysis of the ultimate merits of your client's claims? In other words, your client brought a defamation claim and a tortious interference claim, correct?  So if I think about the elements of those claims that you would have to prove to ultimately succeed in court, I'm not seeing immediately how the elements of those claims map onto the Stage 1 analysis, which is just was there petitioning activity? In other words, were they petitioning on their own behalf? And is this a mixed claim or a claim solely based on petitioning activity? And focusing on what the District Court said, he decided that it was a mixed claim. It wasn't solely petitioning activity. I'm not seeing how that relates to the merits, and I'm hoping maybe you can tell me if I'm missing something. Sure, yeah. So just on the merits argument, the court decided two issues of why the motion should be dismissed. The first issue was whether the defendants were petitioning on their own behalf, right? That's not an analysis in regards to mixed claims. You have to look at that. What that means is that were the defendants seeking redress for their own personal grievances, right? Here they were not. But how would that impact, again, the elements that your client would have to prove for defamation and tortious interference? So I think the recent Coomer case in the Tenth Circuit of Colorado lays out a modern explanation of this, right? And it was also a defamation case. They relied on Ernst there, and they said because there's affidavits, right? Here there's affidavits from both parties saying it did happen or it didn't happen. And those facts are so intertwined just for that first prong in order to be established because you have to determine why were they making these statements, right? The district court said these statements were made on behalf of the employers, the patients, and the schools, right? Because of that. Why would that impact the defamation claim? Which element of the defamation claim would that impact? I think just generally with defamation you have to determine if it was, A, a false statement, right? B, if there's damages. And if the issue is they made these statements or they made these reports, I think it's too hard to say it's completely distinct because that's exactly what's at issue. The facts are simply too intertwined in order to determine that they're completely separate. Counsel, as I understand it, part of their argument that there was no defamation is they were privileged to make these claims because they were making them to government agencies. And they say as to the district court finding as to making the claims outside of government, they say all we did was provide them with a copy of what we provided to the government. So it seems to me that the first finding does sort of get into the merits of their privileged defense. And so it's not entirely independent, which is a requirement of the collateral order doctrine. Yeah, I think that's fair, Your Honor. I think from what I understand their privileged argument to be is that in the reports they say they're a mandatory reporter. And what the district court I believe rightfully said is in order for that to apply is you have to be doing something in a professional capacity. These individuals had no connection to my client in relation to her work or her school, right? They were completely separate. And I think what the court really has to do is look at the context of the facts in this case, right? Like if you look at the way the timeline prevails in here, right, is that my client was abused, right? She was beaten. Her husband was arrested, right? There's a text message that says get ready for the investigation. I have friends and family. A few weeks later, there's reports that are saying that my client did these things. I want to quickly point out, too, she was vindicated. She was vindicated. Could you just tell me what facts were in dispute as relates to the prong one of the Bristol analysis? You say there are affidavits with different versions of the truth. Now, in Francini, the court points out there was no dispute. The court accepted the facts and nobody's disputing them. Tell me what are the facts over which there is a dispute in this case. So, in particular, to Colleen, right, my brother counsel mentioned that she never made any statements to any outside sources. I believe in her actual report, she states that she contacted schools, right? That's a disputed fact. Secondly, I think it's important to remember that the test in Bristol Asphalt is two-part, right? Even if they get piloted by that first part that says whether they're doing it on their own behalf, right, meaning the rest of the race they can personally. The second part, they completely failed because the court, as Your Honor pointed out, narrowed the issues where if there's a mixed claim, the court said that those claims are better left for ordinary discovery. Here, we have a mixed claim. That's undisputed, right? The mixed claim is that, yes, they contacted Borne, they contacted the Department of Health, but they also contacted her employers, right, and they also contacted her schools, right? They're arguing that that was legitimately in connection with their petitioning activity because they wanted those folks to be witnesses before Borne. How do you respond to that? Yeah, I think in the cases they cite, too, the Weigel case, Your Honor, that's completely a different set of facts. That was in regards to statements made to the district. No, tell me about other cases. Answer the question. Why does that not, you know, why is that not petitioning activity? They say they're trying to get witnesses for the Borne proceeding. These are the witnesses who would know certain things. That, on its surface, has a plausibility to it. What is wrong with it? I think when looking at the Bristol test, right, that's now new and clear, it's very clear. If there's any mixed claims, the discussion ends. There's no discussion of whether it's, you know, the same thing or mere repetition. But the definition of petitioning in the statute is broad, and it talks about more than just telling the government. There are more things you can do that constitute petitioning. And they would say part of petitioning is talking to witnesses that relate to the government investigation. Is that wrong? Yes, Your Honor. So I think it's because what Bristol did is narrow the issue, right? Before, there was a lot of discussions of what Your Honor is saying, of whether there may be identical claims. Here, Bristol, the discussion ends. If it's mixed, if there's petitioning. A mix is a conclusion. What makes it mixed? If they're doing it, if they're talking to witnesses, why is that mixed? Because the witnesses are private citizens. They're schools, right? They're her employers. So your position is every time you talk to a witness that might be relevant to the government case, that's now, you give them the facts that you know, that's mixed? And I think the previous case all supports that, right? I think, like Your Honor mentioned, the police case, the Radfar case, that case, they made their petitioning activity in court in regards to another police officer. They called that police officer's precinct in Maryland and mentioned that. They said just by doing that, right, that makes it a mixed claim, and therefore, the anti-slap suit. Is your position that it's enough that it's a mixed claim, that maybe we want them as witnesses, but maybe they'll fire her too? Is that what makes it mixed? No, I think it's simply mixed because it's to a non-government entity. And that's an... You may finish your sentence. I would think that also goes to the privilege defense to defamation, which I haven't looked at that law for a while, but I don't think it extends to possible witnesses and spreading defamatory statements to possible witnesses. Again, that just merely goes to whether we have interlocutory jurisdiction. I think you're right, Your Honor. I would respectfully state that the court affirmed the lower court's decision in denying the anti-slap motion. If there's any other questions, I rest on the papers. Thank you. Thank you. Thank you, counsel. At this time, counsel, for the appellant, please reintroduce yourself on the record. You have a one-minute rebuttal. Thank you. Michael McDonough on behalf of the appellants. Your Honors, I want to address this issue of mixed cases and point out that the statute, the language of the statute, doesn't just say reporting to the government. It provides five total things that are protected, immunized, anything made in connection with that report, things reasonably likely to encourage consideration or review of that report, anything, the fourth is reasonably likely to enlist public participation in an effort to that report. It seems like there's a dispute as to what you were trying to do. Maybe that's what you were trying to do. Maybe you were trying to get her fired. I don't know what they were trying to do. It could have been either. This is a family dispute that lends itself to all of this activity. And Bristol makes that inquiry simple. It says the court need not concern itself with the motivations. Simply put, is it within one of those clusters or not? And here it is, a good example. But if I'm just trying to get somebody fired, it's not in connection with the government reporting. If I'm trying to get them to be a witness, it may be. But that's a complicated question. And the court has said it's too complicated, and that's why Bristol simplifies it. Unlike Kaiser v. Kerchak, where the individual's torts expanded beyond governmental reports to threats to the plaintiff and other statements throughout the city, those were mixed claims. Here it was one mirror photocopied complaint to the government about her working for four employers at once. It's natural she went to the employers and the school on the accreditation issue. And that's why this case is like Weil v. Plant and Kriegel v. Wynn, and why the motion should have been allowed and the decision should be reversed. Thank you. Thank you, counsel. Thank you, counsel. That concludes argument in this case.